IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LARRY LEE WATSON,

                         Plaintiff,                       OPINION AND ORDER

v.

                                                        21-cv-120-wmc

KILOLO KIJAKAZI, Acting Commissioner
for Social Security,

                         Defendant.

Pursuant to 42 U.S.C. § 405(g), plaintiff Larry Lee Watson seeks judicial review of the Social Security Commissioner's final determination upholding a finding that she was not disabled. On appeal to this court, plaintiff maintains that Administrative Law Judge ("ALJ") Michael Schaefer erred in: (1) crafting an residual functional capacity ("RFC") that permitted Watson to have "occasional," as opposed to "superficial," contact with supervisors; (2) assigning little or no weight to the opinions of plaintiff's health care provider, Nurse Practitioner Carmen Helmer; (3) failing to seek *either* clarification from the neurologist who conducted a neuropsychological examination but no report *or* a separate neurological examination and report given the absence of a report; and (4) assessing Watson's credibility. Related to his first and third challenges, Watson also seeks remand under sentence six of § 405(g) for consideration of "new evidence" -- a report by Julie A. Hoida-Bobholz, Ph.D., of her neuropsychological examination of Watson in September 2020. For the reasons that follow, the court will remand this case under sentence four for further proceedings consistent with the opinion below.

BACKGROUND[1]

**A. Overview**

Plaintiff Larry Lee Watson has at least a high school education, is able to communicate in English, and has past work experience as a truck driver. Watson has not engaged in substantial gainful activity since July 17, 2017, the same date as his alleged onset disability date. Watson applied for social security disability benefits on August 21, 2017, with a date last insured of December 31, 2021.

With a birth date of July 17, 1960, Watson was 57 years old on the alleged disability onset date, defining him as an individual of advanced age. 20 C.F.R. § 404.1563. Watson claimed disability based on depression. (AR 80.)

**B. ALJ Decision**

ALJ Schaefer held a telephonic hearing on August 25, 2020, at which Watson appeared individually and through his counsel, the same counsel representing him in this appeal. On November 12, 2020, the ALJ issued an opinion finding that Watson had not been under a disability within the meaning of the Social Security Act from his alleged disability onset date through the date of the decision.

The ALJ first determined that Watson had the following severe impairments: "depression and dysthymia, anxiety and alcohol addiction." (AR 16.) The ALJ also considered whether Watson had a cognitive impairment, but concluded that a recent

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #9.

neuropsychological evaluation did not support such a finding, a conclusion Watson does not directly challenge on appeal.

Next, the ALJ considered whether Watson's impairments or combination of impairments met or medically equaled various mental impairment Listings, concluding that they did not. (AR 16-17.) Here, too, Watson does not challenge the ALJ's conclusions. In this section of the ALS's opinion, he did find that Watson had moderate limitations in interacting with others, while including *no* explanation for that finding or any of his other findings with respect to the paragraph B criteria.

At step four, the ALJ further found that even with his impairments, Watson had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following, nonexertional restrictions:

- can understand, remember, or carry out only simple instructions and routine tasks (at a GED Reasoning level of 2 or below) in a work environment with few, if any, changes in the work duties;
- is limited to work environment with no fast-paced production quota or rate (and production requirements should be more goal oriented, such as based on a daily or weekly or monthly quota rather than assembly line work or other similar work);
- is precluded from public interaction or work involving direct customer service;
- is capable of only occasional, brief and superficial, interactions with co-workers and occasional interactions with supervisors; and
- can perform tandem tasks with co-worked only on an incidental basis.

(AR 17.)

After setting forth the standard under SSR 16-3p, the ALJ described plaintiff's medical record. Following a review of records dating back to 2003, well before the alleged disability onset date, the ALJ turned to the records of Nurse Practitioner Helmer, who saw

3

Wilson every one to three months beginning in November 2016. Specifically, Helmer's records confirmed Watson's depression and anxiety, with other more specific findings. (AR 18.) The records also show that Watson "trialed multiple medications," but that none adequately addressed his symptoms. (AR 19.) The ALJ also found that "it is not entirely clear the clamant has given each medication sufficient time to determine its effectiveness, and he sometimes stops medications without telling Ms. Helmer." (*Id.*) The ALJ further noted a "pretty severe alcohol problem," including an OWI charge and Watson's reports that he continues to drink anywhere from four to eight beers a day. (*Id.*) Finally, the ALJ noted Watson's engagement with therapy beginning in 2016 through the date of the hearing, finding that "status exams at these therapy sessions are unremarkable." (*Id.*)

The ALJ also recounted in great detail the two examination reports completed by Jason Kanz, Ph.D., in late 2019, the first of which concerned a psychological evaluation and the second neuropsychological testing for cognitive limitations. (AR 19-21 (discussing Exs. 13F, 15F (AR 753-55, 763-67)).) In his first report, Kanz described plaintiff's depression and anxiety, conducted various tests, and diagnosed him with "continuous alcohol abuse, a major depressive disorder, moderate, a generalized anxiety disorder and a cognitive disorder, pending approval for additional testing." (AR 20.) The second report, which the ALJ did not have at the time of the hearing, but did obtain before issuing his decision, details various cognitive test results, and ultimately found "some deficits with regard to executive functioning principally, which may factor into some of the concerns around behavioral regulation." (AR 21.) That report further reiterated Kanz's prior findings of "notable depression and anxiety," while finding that Watson "appears to use

4

alcohol as a means of managing his psychological symptoms and negative relationships." (*Id.*; *see also* AR 766.)

Noting SSR 16-3p advises that psychological "factors must be carefully considered, but that the claimant's allegations of depression, anxiety and functional loss do not have to be accepted at face value in every case," the ALJ turned to Watson's own reports of his activities. (AR 21-22.) Specifically, the ALJ noted that Watson reported often isolating and refusing to go out in public, while some treatment notes indicate that when he is compliant with his medication, Watson is able to participate in more activities, including running errands with his wife, engaging in some household chores and recreational activities, such as taking walks and fishing. The ALJ also noted Watson's trip to the South to visit his sick mother and a trip to California to help move his son, including flying independently in the latter case. While acknowledging Watson's claim that he could not work because of his depression and anxiety, the ALJ further observed that his OWI conviction impacted his work as a commercial truck driver, having lost his license for several months. Finally, in that same vein, the ALJ noted that a number of records describe his inability to work as a truck driver, but do not address the broader question of his ability to perform other jobs.

With respect to medical opinions, the ALJ did not find any particularly persuasive. As for the state agency medical consultants, both of which found moderate limitations in interacting with others (among other findings), the ALJ found their opinions "only partially persuasive" because their narrative statements included such qualifiers as "may at times" are "vague and not helpful in assessing actual functioning." (AR 23.) In particular, the

5

ALJ found the "limit to never more than 'superficial' interactions is simply not supported." (*Id.*)

The ALJ also rejected a medical form completed in September 2018 by Watson's therapist, Joshua Belskachek, which noted that: (1) Watson's "anxiety stopped him from wanting to leave his home," but "offered no real functional assessment of the claimant's work-related abilities"; and (2) Belskachek and Watson "never discussed work or things related to him working." (AR 24 (citing Ex. 9F/20).)

Particularly material to one of Watson's challenges, the ALJ further considered various medical opinion forms completed by N.P. Helmer, which indicate that Watson was simply unable to work absent described limitations with respect to having to "work in coordination with or proximity to others, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers," among others. (AR 24-25.) As with the other medical experts, the ALJ ultimately found Helmer's opinions "not persuasive," in her case because Helmer used terms such as "seriously limited (distracted 16-20% of the day) or limited by satisfactory (distracted not greater than 15% of the day)," which terms he found of "questionable value, as it suggests an ability to make such precise determinations." (AR 25.) On another form, the ALJ noted Helmer opined that Watson had "no difficulties relating to others including family, friends, and authority figures or supervisors." (*Id.*) Finally, the ALJ gave Helmer's opinions no weight because she seemed particularly focused on whether Watson could return to work as a truck driver.

6

Similarly, while the ALJ did rely on Psychologist Kanz's findings in describing the medical record, he also found his opinions "not persuasive" because Kanz only saw Watson twice -- suggesting that the ALJ may not understand the important role of a consultative examination can play despite limited or no interactions with the claimant -- and that while Kanz initially noted significant concerns with Watson's cognitive difficulties, he ultimately did *not* diagnose a cognitive impairment.  (AR 27.)

Based on this discussion, the ALJ concluded that while the overall evidence supports finding that Watson cannot return to work as a truck drive, he is still capable of performing other work with certain, nonexertional limitations.  Thus, the ALJ simply reiterated his earlier findings with respect to Watson's limited ability to interact with others, but still providing no explanation for the specific limits adopted.  Specifically, the ALJ does not explain how he reached the conclusion that Watson could tolerate "occasional interactions with supervisors," with no limitation as to the *quality* of those interactions.

Based on this RFC, and with the assistance of a vocational expert ("VE"), the ALJ concluded that Watson could not perform his prior work as a truck driver, but could perform jobs such as commercial/institutional cleaner, an icer, and an equipment cleaner, all of which exist in the national economy in significant numbers.  As such, the ALJ concluded that Watson was *not* under a disability from his alleged onset date through the date of the opinion.

OPINION

The standard by which federals court review a final decision by the Commissioner of Social Security is now well-settled: findings of fact are "conclusive," so long as they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Moreover, provided the Commissioner's findings under § 405(g) are supported by this kind of "substantial evidence," this court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Finally, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).

At the same time, courts must conduct a "critical review of the evidence," *id.*, ensuring that the ALJ has provided "a logical bridge" between findings of fact and conclusions of law. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). Thus, the court must review plaintiff's various challenges under this deferential yet discerning standard.

## I. RFC Limitation with Supervisors

As described above, the ALJ found moderate limitations with respect to Watson's ability to interact with others and included the following, nonexertional restrictions presumably to address that limitation:

- is precluded from public interaction or work involving direct customer service;

8

- is capable of only occasional, brief and superficial, interactions with co-workers and occasional interactions with supervisors; and
- can perform tandem tasks with co-worked only on an incidental basis.

(AR 17.)

Plaintiff argues on appeal that the ALJ erred in not limiting him to "brief and superficial" interactions with supervisors, pointing to testimony from the VE that had he been so limited, Watson would be precluded from full-time competitive employment. (AR 70 (VE testifying that if he was limited to "brief and superficial interactions, in my opinion, you can't expect that with a supervisor").)

As an initial matter, and one not covered by the parties in their briefs, the court agrees with several decisions from the Northern District of Indiana that describe "occasional" as referring to the *quantity* of time spent with individuals, whereas "superficial" refers to the *quality* of the interactions. *See, e.g.*, *Greene v. Saul*, No. 3:19-cv-006870-JD, 2020 WL 4593331, at *4 (N.D. Ind. Aug. 11, 2020) (citing *Wartak v. Colvin*, 2:14-cv-401, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016)). As such, "[e]ven a job that requires only occasional interaction could require an employee to engage in prolonged or meaningful conversations during those few occasions." *Greene*, 2020 WL 4593331, at *4 (internal citation and quotation marks omitted). As such, plaintiff's challenge concerns whether the ALJ built a logical bridge between the record evidence and his determination that Watson did not require any limitation as to the quality of his interactions, at least with supervisors, which was at least arguably driven on this record by the result rather than any reasoned finding.

As plaintiff details in his brief and as described above, the record is replete with examples of plaintiff's social isolation and interpersonal wariness. (Pl.'s Opening Br. (dkt. #15) 14.) Moreover, at least in one of the forms she completed, Helmer indicated that Watson was unable to perform any work "that requires . . . interactions with others." (AR 569.) Indeed, the ALJ acknowledged these records in his decision, but declined to give any weight on either of the opinions of Nurse Practitioner Helmer or Consulting Examiner Dr. Kanz in this regard. While plaintiff separately challenges the ALJ's treatment of their respective opinions, the ALJ *also* rejected the state agency psychological consultants' opinions, at least with respect to their conclusions about Watson's ability to interact with supervisors. In particular, both Bruce Goldsmith, Ph.D., who reviewed Watson's file initially, and Catherine Bard, Ph.D., who reviewed his file upon reconsideration concluded that Watson was "moderately limited" with respect to his ability to interact with others, and concluded that he was "limited to occasional and superficial interpersonal contact" with both coworkers *and* supervisors. (AR 86, 106.)

Having rejected the opinions of Watson's treating physician, at least with respect to any limitation of the quality of his interactions with supervisors, *and* plaintiff's treating medical practitioner's opinions, the ALJ's decision leaves the parties and this court guessing as to the actual basis for his in crafting the RFC without restrictions concerning the quality of interactions with supervisors. Indeed, the ALJ offers *no* explanation in his opinion for this finding, and in assessing the Paragraph B criteria, the ALJ simply states his conclusion as to the extent of limitations with no explanation or citation to any records to support such findings. (AR 17.) Finally, after rejecting all opinion testimony that could have

10

formed a basis for such findings, the ALJ simply states that Watson "remains capable of" meeting the requirements of the ALJ's RFC. (AR 27-28.)

Perhaps recognizing these deficiencies, the Commissioner in her opposition brief attempts to bolster the ALJ's RFC by reference to some of Nurse Practitioner Helmer's statements about Watson's ability to interact with others. (Def.'s Opp'n (dkt. #20) 17.) However, this explanation runs counter to the ALJ's own finding that Helmer's opinions were unpersuasive. (AR 25-26.) Moreover, this court's "review is limited . . . to the ALJ's rationales"; it may "not uphold an ALJ's decision by giving it different ground to stand upon." *See Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)). As such, the court agrees with plaintiff that the ALJ failed to build a logical bridge between the record evidence and his formulation of Watson's restriction on interactions with others, specifically his decision not to include any restriction as to the quality of Watson's interactions with supervisors. Accordingly, a remand is warranted.

## II. Other Challenges

Having concluded that a remand is warranted in light of the ALJ's failure to explain adequately his RFC with respect to Watson's ability to interact meaningfully with supervisors, the court will only touch briefly on plaintiff's other arguments for remand. In addition to challenging the RFC, plaintiff contends that the ALJ erred in his treatment of the opinions of plaintiff's nurse practitioner treatment provider, the opinion of the consultative examiner, Dr. Kanz, and in his credibility assessment. While the court agrees with plaintiff the some of the ALJ's explanations are suspect -- particularly his apparent,

11

blanket rejection of Helmer's ratings of Category B criteria, because such findings are not amendable to precise "percentage determinations," and his rejection of Dr. Kanz's consultative examiner opinion, because he did not treat Watson -- the court will leave it to the ALJ to reweigh these opinions as part of providing further explanation for his ultimate formulation of Watson's RFC, including a discussion of evidence of Watson's social isolation. Finally, the ALJ may reconsider Watson's subjective statements in light of these determinations.

### III. New Neuropsychological Report

In addition, plaintiff seeks remand under sentence six of § 405(g) for consideration of new evidence -- a September 2020 report by Julie A. Hoida-Bobholz, Ph.D. While the court agrees with defendant that plaintiff's argument for good cause in failing to present this report timely is strained, the court need not resolve this argument in light of its decision to remand under sentence four. Upon remand, the Appeals Council and the ALJ may determine whether consideration of the September 2020 report is warranted, especially in light of the finding that Watson's date last insured was December 31, 2020.

ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying plaintiff Larry Lee Watson's application for social security disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk's office is directed to enter judgment in plaintiff's favor and close this case.

Entered this 3rd day of February 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge